UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**MICHAEL LEE WASHINGTON,**

                **Petitioner,**

        **v.**                                              Case No. 08-CV-111

**CATHY JESS,**

                **Respondent.**

## DECISION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

      Michael Lee Washington ("Washington") is incarcerated pursuant to the judgment of a state court and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) On February 22, 2008, the Honorable Rudolph T. Randa screened Washington's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 5.) On April 7, 2008, the respondent answered the petition. (Docket No. 9.) Following consent of the parties to the full jurisdiction of a magistrate judge, this case was reassigned to this court on April 7, 2008. (Docket No. 12.) On April 11, 2008, this court ordered the respondent to provide the court with certain transcripts in accordance with Rule 5(c) of the Rules Governing Section 2254 Cases. On April 30, 2008, the respondent provided the requested transcripts. On May 12, 2008, Washington indicated that he would not reply to the respondent's answer.

      Washington subsequently filed a Motion for Summary Judgment, (Docket No. 20), and a Supplement to his Petition, (Docket No. 21), to which the respondent has responded with her own Cross-Motion for Summary Judgment, (Docket No. 23), and a Brief in Support, (Docket No. 24).

The court finds that the arguments raised in these pleadings are subsumed within the petition and therefore the court shall not address these pleadings separately.

On August 15, 2008, the petitioner filed a motion asking the court to make a determination of whether it is necessary for him to file a brief. (Docket No. 26.) This motion seeks legal advice from the court that the court is unable to offer. Therefore, this motion shall be denied. Finally, Washington further supplemented his petition on November 18, 2008. (Docket No. 30.) The pleadings on Washington's petition are closed and the matter is ready for resolution.

**FACTS**

The facts leading to Washington's arrest were set forth in the court of appeals decision affirming his conviction:

> [Washington] was charged with having given a forged check for $1100 to a man to whom he owed $800, and asked for $300 back. The man, who was suspicious about the check, went to both the bank and the company that supposedly issued the check, to see if the check was valid. The company said that they had not issued the check. The bank said that the company did not have an account at that bank. Washington told the victim that he had gotten the check from the company as a paycheck. The check was made out to Washington but he had not endorsed it.

(Docket No. 9-3.)

On March 18, 2005, following a jury trial in the Racine County Circuit Court, Washington was convicted of the crime of Forgery-Uttering in violation of Wisconsin Statute § 943.38(2) and sentenced to two years, six months of initial confinement and three years of extended supervision. (Docket No. 9-2.)

Washington appealed his conviction to the Wisconsin Court of Appeals. His appellate counsel filed a no-merit report to which Washington filed three separate responses. On November 22, 2006, the Court of Appeals affirmed Washington's conviction and released his appellate counsel from further representation of him on the matter. (Docket No. 9-3 at 8.) The Supreme Court of Wisconsin subsequently denied review of the case on April 17, 2007. (Docket No. 9-4.) On

September 28, 2007 Washington moved for a new trial. (Docket No. 1 at 25.) This post-conviction motion was denied by the Racine County Circuit Court on October 30, 2007. (Id. at 20.)

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is

3

different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**ANALYSIS**

Washington alleges four grounds for relief: (1) denial of due process under the United States Constitution resulting from the lack of preliminary hearing, arraignment, and plea hearing regarding the crime for which he was tried; (2) a lack of tangible evidence linking him to the crime; (3) ineffective assistance of counsel for failure to challenge the sufficiency of the criminal complaint; and (4) ineffective counsel for failure to object to evidence relating to his past debts. (Docket No. 1, at 6-9.) This court will address each ground in turn.

*Denial of Due Process*

Washington alleges that while he was charged with one count of felony uttering, the jury instructions and verdict form were for the crime of "possession with intent to utter" and that this discrepancy meant that no preliminary hearing was held regarding the crime of which he was eventually convicted. (Id. at 6-7.) According to his petition, Washington alleges this to be a

4

violation of his right to procedural due process. The respondent argues that questions of pretrial procedure are strictly state matters and do not rise to the level of a federal constitutional claims.

The Wisconsin Court of Appeals addressed the question of whether he was charged and tried for separate crimes and noted that Washington's claim of a discrepancy is not supported by the record. "He . . . claims at another point that he was never charged with the crime of which he was convicted. He is incorrect. . . . Wisconsin Stat. § 943.38(s) states: 'Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing. . . .' The information states that he is charged with this crime, and the judgment of conviction states that he has been convicted of this crime." (Docket No. 9-3 at 7.)

The court finds that Washington's arguments raise only matters of state law, and thus with respect to this claim Washington has failed to raise a claim that is cognizable in a federal habeas corpus proceeding under § 2254. Therefore, the court must deny Washington's petition as to this ground for relief.

### *Lack of Evidence*

Washington also claims that the evidence presented in his case was insufficient to support his charge and later conviction of uttering. He bases this claim on a supposed lack of evidence physically linking him to the forged check at issue. (Docket No. 1 at 7.) The respondent contends that Washington is "unable to prove the Wisconsin courts resolved this challenge in a manner that is contrary to, or involves an unreasonable application of, the clearly established principles" mandated by the U.S. Supreme Court. (Docket No. 9-1 at 3.)

In its review of the question, the Court of Appeals conducted an independent review of the record and determined that "there was . . . sufficient evidence to support the verdict." (Docket No. 9-3 at 3.) Furthermore, that "[t]he victim testified that Washington gave the check to him to repay a

loan and asked the victim to give him $300 from the check . . . is sufficient evidence to support the conviction." (Id.)

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 US 358, 364 (1970)). "A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." Id. at 318.

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-19 (internal citations, quotation marks, and footnote omitted).

This court has conducted its own independent review of the transcripts of the jury trial and also concludes that there was sufficient evidence to sustain the defendant's conviction. Therefore, this court is not persuaded that the conclusion of the state courts was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Thus, the court must deny the Washington's petition as to this ground.

*Ineffective Assistance of Counsel*

Finally Washington alleges that the assistance provided by his counsel was defective for two reasons: (1) failure to file a motion challenging the sufficiency of the criminal complaint; and (2) failure to object to the admission of evidence relating to his prior debts. (Docket No. 1 at 8-9.) The

6

respondent counters by stating that Washington was "unable to prove either deficient performance or prejudice to his right to a fair trial arising out of counsel's alleged failings at the preliminary hearing or at sentencing." (Docket No. 9-1 at 3.)

The Court of Appeals first dealt with the question of whether his attorney should have challenged the criminal complaint against him as deficient and concluded that "[s]ince neither the complaint nor the information was insufficient, counsel was not ineffective for failing to challenge them on that basis." (Docket No. 9-3 at 8.) Finally, the court addressed Washington's counsel's decision not to object to the admission of certain evidence (namely the testimony relating to prior debts) during his preliminary hearing. Here the court simply stated that "there is no merit to this argument and counsel was not ineffective." (Docket No. 9-3 at 7.)

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's

7

alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

As for Washington's claim that his trial counsel was ineffective for failing to challenge the sufficiency of the complaint, the court has reviewed the complaint and fails to find any deficiency. Because the complaint is not insufficient, his counsel's failure to raise a challenge could not have been unreasonable or prejudicial. Therefore, this court is unable to find that the conclusion of the state courts was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Thus, the court must deny the Washington's petition as to this ground.

Finally, Washington alleges that his trial counsel was ineffective for failing to object to the admission of evidence relating to other debts. The court finds no prejudice in counsel's failure to object to the admission of this evidence during trial. The evidence was properly admitted since it was relevant to establishing the context of the relationship and prior dealings between Washington and the victim and provided an explanation as to why Washington gave the intended victim a check. Thus, it was not prejudicial for defense counsel to not object.

However, Washington also raises a related argument regarding defense counsel's performance with respect to the issue of prior loans between the defendant and the victim. Specifically, at sentencing Washington was ordered to pay restitution for the full amount of all loans between Washington and the victim. This restitution amounted to $15,000.00, despite the fact that the only crime of which Washington was convicted was the crime of possessing with intent to utter a $1,100.00 check. Since the check was never negotiated, the defendant's crime did not result in any loss for the intended victim.

8

Under the Wisconsin restitution statute, Wis. Stat. § 973.20 (2003-2004) (all citations to Wisconsin statutes are to the 2003-2004 edition, the edition in effect at the time of Washington's sentencing), the sentencing court "shall order the defendant to make full or partial restitution . . . to any victim of a crime considered at sentencing." Wis. Stat. § 973.20(1r). A "'[c]rime considered at sentencing' means any crime for which the defendant was convicted and any read-in crime." Wis. Stat. § 973.20(1g)(a). Further, the court may order a defendant to "[p]ay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." Wis. Stat. § 973.20(5)(a).

> (a) The court, in determining whether to order restitution and the amount thereof, shall consider all of the following:
>
>> 1. The amount of loss suffered by any victim as a result of a crime considered at sentencing.
>>
>> 2. The financial resources of the defendant.
>>
>> 3. The present and future earning ability of the defendant.
>>
>> 4. The needs and earning ability of the defendant's dependents.
>>
>> 5. Any other factors which the court deems appropriate.
>
> (b) The district attorney shall attempt to obtain from the victim prior to sentencing information pertaining to the factor specified in par. (a) 1. . . .
>
> (c) The court, before imposing sentence or ordering probation, shall inquire of the district attorney regarding the amount of restitution, if any, that the victim claims. The court shall give the defendant the opportunity to stipulate to the restitution claimed by the victim and to present evidence and arguments on the factors specified in par. (a) If the defendant stipulates to the restitution claimed by the victim or if any restitution dispute can be fairly heard at the sentencing proceeding, the court shall determine the amount of restitution before imposing sentence or ordering probation. In other cases, the court may do any of the following:
>
>> 1. Order restitution of amounts not in dispute as part of the sentence or probation order imposed and direct the appropriate agency to file a proposed restitution order with the court within 90 days thereafter, and mail or deliver

9

> copies of the proposed order to the victim, district attorney, defendant and defense counsel.
>
> 2. Adjourn the sentencing proceeding for up to 60 days pending resolution of the amount of restitution by the court, referee or arbitrator.
>
> 3. With the consent of the defendant, refer the disputed restitution issues to an arbitrator acceptable to all parties, whose determination of the amount of restitution shall be filed with the court within 60 days after the date of referral and incorporated into the courts sentence or probation order.
>
> 4. Refer the disputed restitution issues to a circuit court commissioner or other appropriate referee, who shall conduct a hearing on the matter and submit the record thereof, together with proposed findings of fact and conclusions of law, to the court within 60 days of the date of referral. Within 30 days after the referees report is filed, the court shall determine the amount of restitution on the basis of the record submitted by the referee and incorporate it into the sentence or probation order imposed. The judge may direct that hearings under this subdivision be recorded either by audio recorder or by a court reporter. A transcript is not required unless ordered by the judge.

Wis. Stat. § 973.20(13)(a).

At Washington's sentencing, the prosecutor stated:

> The defendant is lucky that he was not charged with theft by false representation because he got this money from [the intended victim] by telling him lies about what he was going to do with that money. Certainly the theory would have been there to charge him with a theft with reference to that $15,000, but he is only here facing this one count of possession with intent to utter a forged writing.

(Supp. to Ans. Ex. 46 at 5.)

Although defense counsel did not request a formal restitution hearing, he did make a passing objection to the restitution amount during his argument at sentencing. Defense counsel said:

> I don't think there's a basis for any restitution on [the $15,000 given to Washington by the intended victim]. [The intended victim] didn't report that those were crimes. That that [sic] money was given to Mr. Washington. I believe [the intended victim] even testified that after he found out that the check that he was presented by Mr. Washington—he claims was presented by Mr. Washington was no good, he still loaned Mr. Washington money after that. So I really don't see that Mr. Washington—there's a legal basis to require him to pay restitution for amounts that [the intended victim] indicated he voluntarily gave to Mr. Washington and isn't claiming more crimes for.

(Supp. to Ans. Ex. 46 at 6.)

Nonetheless, despite the fact the prosecution conceded that Washington was never charged with any crime related to the $15,000 he obtained from the intended victim, the court made the following statements and conclusions regarding restitution:

> In terms of restitution, the issue is whether the Court should order restitution and whether the record in this case is sufficient for me to find that the amount due and owing is $15,000. It's clear that [the intended victim's] testimony in the record and it's clear I think that I can find that the amount due and owing exceeds the $15,00 [sic] amount that's requested. It's also clear from the pre-sentence report that [the intended victim] himself does not wish to ask for restitution, and he states that because he doesn't feel that Mr. Washington would ever get a job and be capable of repaying him. I am satisfied that's part of the rehabilitative process to make people right the wrong that they have. So I am satisfied I can find based on all the facts in this record that the amount of restitution due and owing to [the intended victim] is $15,000 based upon the fact that he has testified to the loans he made to Mr. Washington and also the fact that he made further loans after this incident in the form of the construction loan and it very well exceeds the $15,000 mark that's been found the Court, but I think that's a good number that should be applied. I am also satisfied that again the record supports the amount and the need for repayment. I think that's part of the process where Mr. Washington has to right the wrong and repayment is certainly part of that.

(Supp. to Ans. Ex. 46 at 20-21.) Therefore, Washington was ordered to pay $15,000 in restitution as a condition of his extended supervision. (Judgement of Conviction, Docket No. 9-2.)

During trial, the intended victim testified that he made a series of loans "in excess of $15,000" to Washington in an effort to help him after Washington was released from prison. (Supp. Ans. Ex. 44 at 39.) On cross-examination, the intended victim testified that at the time Washington tendered the counterfeit check, Washington owed the intended victim "about $800." (Supp. Ans. Ex. 44 at 48.) This $800 loan was outstanding for about three weeks at the time Washington tendered the counterfeit check. (Supp. Ans. Ex. 44 at 49.) The intended victim later testified that he had loaned about $10,000 to Washington before this counterfeit check incident and an additional $5,000 after Washington tendered the counterfeit check. (Supp. Ans. Ex. 44 at 58.)

11

When Washington testified on his own behalf, he acknowledged that he owed the intended victim money; Washington could not estimate how much he received but accepted the intended victim's estimate. (Supp. Ans. Ex. 44 at 109, 116-17.) However, Washington alleged that some of the money he received from the intended victim was a gift. (Supp. Ans. Ex. 44 at 114-15.) The money that he received from the intended victim was Washington's only source of income at this time. (Supp. Ans. Ex. 44 at 116.)

It was Washington's possession with the intent to utter the counterfeit $1,100 check that was the crime that the court could consider at sentencing. See Wis. Stat. § 973.20(1g)(a). There were no read-in crimes. It is undisputed that this counterfeit check was never negotiated and there was no financial loss related to this crime of which Washington was convicted. Nonetheless, the sentencing judge looked beyond Washington's conviction and considered the numerous un-repaid loans between Washington and the intended victim.

Before this court can appropriately consider whether it was unreasonable or prejudicial for Washington's counsel not to challenge this ordered restitution by requesting a restitution hearing and whether the state courts unreasonably applied the Strickland precedent, the court must first determine that Washington satisfied certain prerequisites. First, the court must determine whether Washington has exhausted his state court remedies with respect to this claim.

Washington's appellate counsel filed a no-merit report that did not raise this issue as one that may potentially have merit. (Docket No. 9-5.) However, Washington responded to his appellate counsel's no-merit report and alleged, "Trial counsel was ineffective for allowing defendant to be subjected to the $16,668 dollars restitution without a restitution hearing." (Docket No. 9-6 at 4.) The court of appeals summarily dismissed Washington's argument by stating, "The court, however, determined the amount of restitution based on the evidence presented at trial. Washington had the chance to challenge this evidence during the trial. This also lacks merit." (Docket No. 9-3 at 7.) It is

12

unclear whether Washington presented this issue to the Wisconsin Supreme Court because the respondent has not provided the court with Washington's petition for review, and thus this court is unable to independently assess whether Washington has exhausted his state court remedies with respect to this claim for relief. However, the respondent admitted in the answer that Washington has "exhausted all available state court remedies with respect to the constitutional challenges to his conviction." (Ans., Docket No. 9 at 2, ¶3.) Thus, the court accepts the respondent's admission regarding exhaustion.

Secondly, the court must determine whether Washington satisfies the "custody" requirement of the federal habeas statute. See § 2254(a). The purpose of habeas corpus is to effect release from illegal custody. Preiser v. Rodriguez, 411 U.S. 475, 486 n.7 (1973). It appears undisputed that Washington is physically in the custody of the Wisconsin Department of Corrections. However, simply because a petitioner is in custody does not permit him to challenge non-custodial aspects of his sentence. Kaminski v. United States, 339 F.3d 84, 88 (2d Cir. 2003). If Washington were to prevail on his claim that his trial counsel was ineffective for failing to request a restitution hearing or otherwise object to the restitution ordered at sentencing, Washington would not be entitled to be released from prison. Rather, if Washington succeeded on his claim, he would likely be entitled to a restitution hearing and perhaps have the restitution order vacated.

"Section 2254 authorizes federal courts to 'entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Virsnieks v. Smith, 521 F.3d 707, 721 (7th Cir. 2008) (quoting § 2254(a)). The constitutional violation, if any, relates not to Washington's physical confinement; the court having rejected all of Washington's other challenges to his conviction, Washington would be incarcerated regardless of the restitution order. Rather, if Washington received ineffective assistance of counsel, this

ineffectiveness affected only the order for restitution. Thus, Washington presents a claim that is cognizable in a federal habeas corpus petition only if an order for restitution constitutes "custody" under §2254(a).

Although the definition of custody has expanded in recent years beyond merely traditional confinement in prison, habeas petitioners must nonetheless "establish that they are subject to conditions that significantly restrain their liberty." Virsnieks, 521 F.3d at 717 (quoting Jones v. Cunningham, 371 U.S. 236, 243 (1963) (internal quotation marks, brackets, and ellipses omitted)). The issue of custody in federal habeas corpus petitions was recently examined at length by the Seventh Circuit Court of Appeals in Virsnieks. In that case, the court held that a requirement that a petitioner register as a sex offender cannot be considered custody under §2254(a). Id. at 720. In reaching this conclusion, the court noted that other courts have rejected claims that other non-physical restraints, including orders of restitution, satisfied the custody requirement. Id. at 718 (citing Smullen v. United States, 94 F.3d 20, 25 (1st Cir. 1996)).

The Seventh Circuit Court of Appeals has held that an order for restitution cannot be challenged in a petition under § 2255. Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997) (citing Tinder v. Paula, 725 F.2d 801, 804 (1st Cir. 1984); Smullen, 94 F.3d 20). Notwithstanding, this court has identified two cases from the Sixth Circuit wherein the court modified restitution awards raised for the first time in a § 2255 petition without any discussion of whether the custodial prerequisite was satisfied. Gall v. United States, 21 F.3d 107, 111-12 (6th Cir. 1994); Ratliff v. United States, 999 F.2d 1023, 1025-28 (6th Cir. 1993).

Other circuit courts that have directly addressed the issue of whether a restitution order may constitute custody under § 2254 have rejected the argument. See, e.g., Obado v. New Jersey, 328 F.3d 716, 718 (3d Cir. 2003) (per curiam order denying request for certificate of appealability); Tinder v. Paula, 725 F.2d 801, 803-05 (1st Cir. 1984).

It should be noted that the court in Tinder rejected the petitioner's argument that the obligation to pay restitution constituted custody because his probation had already expired without any effort by the state to enforce the restitution order. Id. at 805. As such, the petitioner was free of the threat of future incarceration for the non-payment of the restitution except by way of a contempt proceeding. Id. Thus, the court determined that, under the circumstances presented, the non-payment of restitution was equivalent to the non-payment of a fine, and therefore non-custodial. Id.

Relying upon Tinder, the court in Obado rejected the petitioner's claim that an order for restitution constituted custody. Obado, 328 F.3d at 717-18. In that case, it is unclear whether the petitioner was on probation and paying restitution as a condition of that probation at the time he filed the petition. If so, he would be subject to the threat of future incarceration. (Petitioner was sentenced to one year in jail and 4 years probation in 1990; on May 31, 2002, he alleged he was still paying restitution as a condition of his probation. Id. at 717.)

In the present case, restitution was ordered as a condition of Washington's extended supervision. (Judgement of Conviction, Docket No. 9-2); see also Wis. Stat. § 973.20(1r) ("Restitution ordered under this section is a condition of probation, extended supervision, or parole served by the defendant for a crime for which the defendant was convicted."). Therefore, if he fails to comply with the restitution order it is possible that his extended supervision could be revoked and he would be forced to serve prison time. See Wis. Stat. § 302.113(9). Further, if he is discharged from his extended supervision without having paid the ordered restitution, the order is enforceable by the victim as a civil judgment against the petitioner. Wis. Stat. § 973.20(1r).

The court has not been able to identify any federal court case that has addressed a factual situation analogous to the one presented here, i.e. whether a § 2254 petitioner, who may be subject to revocation of extended supervision as a result of his failure to pay restitution, is considered to be in custody. The court notes that, in a footnote, the court in Smullen, 94 F.3d at 26 n.8 stated,

"Should Smullen become incarcerated in the future due to his failure to meet the restitution order as the basis for his confinement obligations, he may, although we need not decide for present purposes, be entitled to bring a § 2255 action challenging his restitution at that point."

This court is uncomfortable adopting a wait-and-see approach in light of numerous procedural obstacles established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), such as the one-year statute of limitations, § 2244(d)(1), and the limitations upon second or successive petitions, § 2244(b). Such obstacles could prove to be insurmountable hurdles for Washington, especially since he is proceeding pro se.

Unfortunately, the court finds the potential for Washington's future incarceration as a direct consequence of a failure to comply with the restitution order too speculative to satisfy the custody requirement of § 2254. Courts have held that the possibility of future incarceration is sufficient to satisfy the custody requirement only if the future custody is "imminent." See, e.g., United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990); Dremann v. Francis, 828 F.2d 6, 7 (9th Cir. 1987); Tinder, 725 F.2d at 804 ("Penalties that do not impose such a restraint or the imminent threat of such a restraint do not meet the custody requirement of the habeas statute.") Because the court concludes that Washington's order for restitution, only presenting the speculative possibility that non-payment may result in revocation and future imprisonment, does not render a petitioner "in custody." Accordingly, the court need not consider whether Washington's trial counsel was ineffective for failing to challenge the restitution order. Therefore, for the reasons set forth above, the court shall deny Washington's petition for a writ of habeas corpus.

Whether Washington would be able to pursue relief in federal court should he subsequently be incarcerated solely as a consequence of a failure to pay the restitution is a question not currently before this court.

**IT IS THEREFORE ORDERED** that Washington's petition for a writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Washington's Motion for Summary Judgment, (Docket No. 20), is **denied**.

**IT IS FURTHER ORDERED** that the respondent's Cross-Motion for Summary Judgment, (Docket No. 23), is **granted**.

**IT IS FURTHER ORDERED** that Washington's "Motion for the Court to Make a Determination if a Brief is Necessary," (Docket No. 26), is **denied**.

Dated at Milwaukee, Wisconsin this 11th day of December 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge